**David F. and Jane ERTMAN, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 3:96CV01036(PCD).**

United States District Court,
D. Connecticut.

Aug. 1, 1997.

Samuel M. Hurwitz, W. Glen Pierson, Brenner, Saltzman & Wallman, New Haven, CT, for Plaintiffs.

Lauren M. Nash, U.S. Attorney's Office, New Haven, CT, Philip J. Berkowitz, U.S. Dept. of Justice, Tax Div., Washington, DC, for Defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Plaintiffs and defendant filed cross-motions for summary judgment. For the following reasons, plaintiffs' motion is **DENIED.** Defendant's motion is **GRANTED.**

### I. BACKGROUND

The following facts are undisputed. On or about April 15, 1988, plaintiffs David F. Ertman and Jane Ertman ("the Ertmans") submitted a Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return" ("Form 4868 Application") and $11,000 to the Internal Revenue Service ("IRS"), requesting a four-month extension of time to file their Federal income tax return for the tax year ending December 31, 1987. An extension of time was granted until August 15, 1988. The Ertmans requested an additional extension until October 15, 1988, which was granted.

On or about April 15, 1989, the Ertmans submitted another Form 4868 Application and $49,000 to the IRS, requesting a four-month extension of time to file their Federal income tax return for the tax year ending December 31, 1988. An extension of time was granted until August 15, 1989. The Ertmans requested an additional extension until October 15, 1989, which was granted.

The Ertmans did not file their 1987 tax return until on or about April 11, 1994. The return reported a tax liability of $4,808 and a 1987 estimated tax payment of $11,000. The Ertmans requested their claimed $8,265 overpayment be applied to their 1988 estimated tax.

The Ertmans filed their 1988 tax return on or about April 15, 1994. The return reported a tax liability of $7,522 and a 1988 estimated tax payment of $57,265. The Ertmans requested their claimed $53,655 overpayment be applied to their 1989 estimated tax. Plaintiffs seek a refund of the alleged overpayments.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A trial is only warranted if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All factual inferences are drawn in favor of the non-moving party. *Id.* at 255, 106 S.Ct. at 2513–14.

### B. Payment or Deposit

It is undisputed that the Ertmans are barred from recovering any tax payments made more than three years and six months before they filed their claim for an overpayment. I.R.C. § 6511(b)(2)(A). "The failure to file a timely claim for refund is a jurisdic-tional bar to suit." *Consol. Edison Co. of New York, Inc. v. U.S.*, 941 F.Supp. 398, 400 (S.D.N.Y.1996) (*citing United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), *reh'g denied*, 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990); *Kuznitsky v. United States*, 17 F.3d 1029, 1031 (7th Cir.1994)). The only issue is whether the sums remitted by the Ertmans in 1987 and 1988 constitute "payments" or "deposits." "Payments" are subject to the statute of limitations; "deposits" are not.

■ "[C]ourts have consistently interpreted 'payment' as a remittance which satisfies an asserted tax liability." *Consol. Edison* 941 F.Supp. at 401 (citations' omitted).[1] Nonetheless, there is some split among the federal courts regarding the proper test for determining whether a remittance is a "payment" or a "deposit," based on differing interpretations of *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945).[2] A minority of courts hold that a remittance made prior to an assessment of tax liability is *per se* a deposit. *See United States v. Dubuque Packing Co.*, 233 F.2d 453, 460 (8th Cir.1956), *Thomas v. Merchantile Nat'l Bank at Dallas*, 204 F.2d 943, 944 (5th Cir.1953). The Second Circuit, however, has rejected that minority view. *See Lewyt Corp. v. Comm'r of Internal Revenue*, 215 F.2d 518, 522 (2d Cir.1954) ("we do not read Rosenman to foreclose treating as a tax payment any remittance made prior to assessment ...").

■ Another line of cases adopt the "facts and circumstances" test. Under the facts

---

1. There are no published opinions in the Second Circuit regarding whether a remittance with a Form 4868 Application is a "payment." The Second Circuit, however, has defined "payment" in a different context: whether a "payment" has occurred depends on whether the taxpayer and the IRS have agreed that a particular remittance will satisfy an existing tax liability or "whether the taxing authorities have a duty under the particular circumstances involved to accept the remittance as a payment of the tax. ...." *Lewyt Corp.*, 215 F.2d at 522. As discussed above, the Internal Revenue Code requires that a remittance accompanying a Form 4868 Application be treated as a payment of estimated tax.

2. In *Rosenman*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, the Supreme Court held that a remit-tance for estate taxes made "under protest and duress, and solely for the purpose of avoiding penalties and interest", *id.* at 660, 65 S.Ct. at 537, was not a "payment" of estate tax. *Id.* at 661, 65 S.Ct. at 537–38. *Rosenman*, is distinguishable from the instant case. *Rosenman*, involved estate taxes paid under protest and a complaint regarding an assessment of a deficiency. The relevant statute required a claim for a refund of an estate tax " 'alleged to have been erroneously or illegally assessed or collected' " be made within three years after the payment of such tax. *Id.* Here, the remittance was not made under protest, did not involve the assessment of a deficiency and the refund is sought under a different statute.

and circumstances test, the court considers various factors when determining whether a remittance is a "payment," including when the tax liability is defined, the taxpayer's purpose in remitting the money and how the IRS treated the payment. *See Blatt v. United States*, 34 F.3d 252, 255 (4th Cir.1994) (citation omitted); *Ewing v. United States*, 914 F.2d 499, 503 (4th Cir.1990), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). The taxpayer's intent is the ultimate question. Here, however, the Internal Revenue Code addresses the remittance at issue in this case and requires that the remittance be treated as a payment of tax.[3]

Remittances accompanying a Form 4868 Application are controlled and defined by the Internal Revenue Code. Taxpayers have an affirmative duty to file income tax returns and pay the amount due for that year, "without assessment or notice and demand by the Secretary...." I.R.C. § 6151(a). *Accord: Gabelman v. Comm'r of Internal Revenue*, 86 F.3d 609, 611 (6th Cir.1996) (*citing Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 565, 70 S.Ct. 386, 388–89, 94 L.Ed. 346 (1950)). Taxes are considered paid as of the *due date of the return* (without regard to any extension of time), not when the return is actually filed. I.R.C. § 6513(b)(2). Applying for an extension of time to file a tax return does not "extend the *time for payment* of any tax due on such return." Treas. Reg. § 1.6081–4(b) (emphasis added). Instead, the taxpayer must submit an estimated payment of taxes with the Form 4868 Application:

> Such application for extension must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return.

26 C.F.R. § 1.6081–4(a)(4).[4] "The express language of the regulations requires taxpayers to submit an estimated tax *payment* of their taxes with Form 4868 extension requests." *Gabelman*, 86 F.3d at 612 (emphasis in original). An individual's tax liability, therefore, exists at the time the return is due. A remittance in the face of the taxpayer's estimate of a tax liability is logically applied to, and thus a payment of, the tax owed. By the taxpayer's estimate of the tax owed, the existence of a liability is conceded. The remittance here, being made under the circumstances of a conceded tax liability, is necessarily a payment in discharge of that liability. It is not a deposit against an uncertain liability.

Additionally, the Form 4868 Application instructs the taxpayer to estimate the total amount of income tax due and clearly provides: *"[t]his is not an extension of time for payment of tax."* (Exh. F, Statement of Material Facts to which the United States Contends there is No Genuine Issue to be Tried ("Def. Statem.") (emphasis in origi-

---

**3.** One of the cases cited by the Ertmans involved a Form 4868. *See Risman v. Comm'r*, 100 T.C. 191, 1993 WL 72856 (1993). The remaining cases did not address a Form 4868, but instead, arose under distinguishable tax situations. For instance, this is not a case where a taxpayer remitted a sum of money under protest solely to stop interest from accruing pending the resolution of a tax dispute. *See e.g. Rosenman v. United States*, 323 U.S. 658, 659–60, 65 S.Ct. 536, 537, 89 L.Ed. 535 (1945); *Cohen v. United States*, 995 F.2d 205, 209 (Fed.Cir.1993).

Moreover, even under the "facts and circumstances" test the Ertmans' remittances were payments. As discussed above, under the Internal Revenue Code the Ertmans' tax liability was due and owing at the time they filed their Form 4868 Applications and accompanying remittances. The Form 4868 clearly set forth that to receive the extension of time a taxpayer had to pay estimated taxes. The $11,000 check remitted with the Ertmans' 1987 Form 4868 had a notation: "1987 est. tax w/4868." The Ertmans did not designate the remittance as a deposit made under protest. In fact, in seeking to recover the overpayment, the Ertmans designated the remittances as payments of estimated tax. As defined and required by the Internal Revenue Code, the remittances were payments of tax as a matter of law.

**4.** Treas. Reg. § 1.6081–4(a)(4) was later amended to provide that a taxpayer does not have to submit the full remittance with the Form 4868. Nonetheless, the taxpayer is encouraged to pay as much as possible to reduce penalties and interest. 61 F.R. 260 (Jan. 4, 1996). Any amount paid would still constitute a payment of estimated taxes. Regardless, the amended regulation does not apply to the Ertmans' returns filed in 1988 and 1989.

nal)). The amounts submitted are repeatedly referred to as a "payment;" taxpayers are instructed to "pay" the amount. (Exh. F, Def Statem.) Accordingly, as defined by the Internal Revenue Code, amounts remitted with a Form 4868 Application are "payments." *See Gabelman,* 86 F.3d at 613 (remittance accompanying Form 4868 "was a tax payment as a matter of law"); *Weigand v. United States,* 760 F.2d 1072, 1073–74 (10th Cir.1985) (remittance with application for extension of time was a "payment" for purposes of Section 6513); *Holtvogt v. United States,* 887 F.Supp. 994, 999 (S.D.Ohio 1995) ("the amount required to be paid with the Form 4868 Application for Extension is a payment of tax owed, as a matter of law"); *England v. United States,* 760 F.Supp. 186, 187 (D.Kan.1991) ("[w]e conclude, as a matter of law, that remittances accompanying Form 4868 applications are payments of estimated tax").[5]

 The Ertmans' taxes were due and payable as of the dates they made the remittances—their tax liability existed at that time even though they did not file a return and even if the precise amount due was not fixed. When they submitted their Form 4868 Application seeking an extension of time, they were obligated, and instructed, to pay their estimated taxes. When the Ertmans filed their late returns in 1994, they characterized their 1987 and 1988 remittances as payments and sought to have the overpayment credited.[6] Albeit grossly overcalculated, the Ertmans' remittances on April 15, 1987, and April 15, 1988, were "payments." Although the IRS may have received a "windfall," it is the Ertmans who chose to apply for an extension of time and then failed to file their returns within the time granted. Had they timely filed their returns, they could have sought a refund or credit of any alleged overpayment.

The Ertmans are barred by I.R.C. § 6511(b)(2)(A) from recovering their alleged overpayment of taxes because they were "paid" more than three years and six months from the date they requested a refund.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [doc. # 11] is **GRANTED.** Plaintiffs' motion for summary judgment [doc. # 14] is **DENIED.**

SO ORDERED.

**5.** *See also Zeier v. United States Internal Revenue Serv.,* 80 F.3d 1360, 1363–64 (9th Cir.1996) (remittance submitted with Form 706 was a "payment" even though no tax had been assessed); *Blatt v. United States,* 34 F.3d 252, 254 (4th Cir.1994) (remittance was a "payment," not a "deposit," even thought the amount of tax owed had not actually been calculated).

**6.** As stated by the Fourth Circuit:

"While a deposit could be drawn on by the taxpayer for a payment of taxes or, depending on the circumstances, could be recalled upon demand, it could not, by its very nature, be claimed to be an 'overpayment' and therefore subject to a refund. *See* I.R.C. § 6402(a). *If the taxpayer treats the remittance to the IRS as an 'overpayment' for which he seeks a refund, he himself characterizes the remittances as a payment of taxes."*
*Blatt,* 34 F.3d at 255 (emphasis added).